IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| ANGELA R. MOORE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:13-cv-01219-NKL |
| | ) | |
| CAROLYN W. COLVIN | ) | |
| ACTING COMMISSIONER | ) | |
| OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

The Commissioner of Social Security's decision regarding Plaintiff Angela Moore's appeal of the Commissioner's final decision denying her application for disability insurance benefits is affirmed.

**I.      Background**

**A.  Moore's Medical History**

Moore's attempt to procure Social Security benefits has been ongoing since 2009. Tr. at 106. An Administrative Law Judge (ALJ) first heard Moore's case in 2010. *Id.* Moore's request was subsequently denied. Thereafter, an Administrative Appeals Judge reviewed the denial and remanded Moore's case for further development of the record regarding medical evidence of the extent of Moore's impairments, Moore's subjective complaints and mental impairments, and Moore's maximum residual functional capacity (RFC). Tr. at 120-123. This case comes to the Court on appeal from the ALJ's second determination that Moore is not entitled to disability benefits.

Moore argues that since September 1, 2008, she has been unable to work due to her alleged impairments. Tr. at 17. She exhibits persistent pain in her hip, lower back, upper back, and neck, and suffers from a number of mental health problems.

In 2006, Moore fell from a height of nearly twelve feet. Tr. at 85. The fall resulted in hip, neck, arm, and back pain for which she has since received consistent chiropractic and medical treatment. Tr. at 522-525, 509-512. As a result of her fall, Moore now needs hip replacement surgery. Tr. at 591.

In September 2008, Moore began seeking treatment for substance abuse and mental health problems. Tr. at 390. From 2008-2010, Moore received treatment from Grant Piepergerdes, M.D. Dr. Piepergerdes saw Moore nineteen times over the course of three years. Tr. at 558. At his first appointment with Moore, Dr. Piepergerdes began treating her for depressive and anxiety symptoms, noting that a primary goal of treatment was to stop Moore's substance abuse and increase her insight and coping abilities. Tr. at 398. From September 2008 through January 2009, Moore continued to suffer from diagnosed bipolar disorder, substance abuse, anxiety, and suicidal tendencies. Tr. at 423, 426-428, 431.

In January 2009, Moore began to see a licensed counselor for anger and substance abuse management. Tr. at 472. Throughout her counseling visits in 2009, Moore reported a series of "stressors" in her life, ranging from her mother taking out a credit card in Moore's name, to her car being repossessed, to her friend dying. Tr. at 467-468,

2

489. During this time Moore also received continuing treatment from Dr. Piepergerdes.[1] Tr. at 400, 403, 478, 486, 489, 494. Moore reported being sober for various spans of time throughout 2009, but continually relapsed to using marijuana and methamphetamine. Tr. at 403, 412, 466-467.

Dr. Piepergerdes' evaluations of Moore throughout 2008 and 2009 noted the murkiness of her diagnosis, given her ongoing substance abuse. Tr. at 20. In the doctor's first evaluation, he noted Moore's good grooming and hygiene, cooperative and polite demeanor, fair eye contact, and normal speech patterns. Tr. at 19. He conveyed to her the importance of getting sober. *Id.* The doctor's assessments remained relatively similar throughout 2008 and 2009, with an eventual diagnosis of bipolar disorder and continual recommendations to Moore to "get clean." *Id.* At a few of her visits with Dr. Piepergerdes, Moore noted that she had been sober for some period of time. For example, in January 2009, Moore noted that she had been sober for about a month and that her symptoms had improved. Tr. at 20-21. By February, Moore had relapsed and her symptoms had worsened. *Id.* Dr. Piepergerdes' notes suggest that this pattern continued throughout March, April, May, and June 2009, with the effectiveness of Moore's treatment plan correlating with Moore's sobriety. *Id.* Throughout the remainder of 2009 and 2010, Dr. Piepergerdes noted that Moore continued to struggle with substance abuse. Tr. at 22-23.

---

[1] Moore suffered from a series of mental health problems throughout the course of her treatment. The record references a prolific number of symptoms; some of the most recurrent include: thoughts of suicide, sleep disturbance, irritable mood, depression, low energy, low motivation, poor concentration and memory, hopelessness, guilt, anxiety, mood swings, anger, racing thoughts, hyperactivity, restlessness, and lethargy.

In June 2009, Glen D. Frisch, M.D., completed a Psychiatric Review Technique and Mental Residual Functional Capacity Assessment of Moore. He concluded that Moore met the qualifications of Listing 12.04(A)-(B), but that absent substance abuse she would be capable of simple work, be able to maintain adequate attendance, sustain an ordinary routine without special supervision, interact adequately with peers and supervisors, and adapt to minor changes in a work setting.

In June 2010, Dr. Piepergerdes concluded that Moore's diagnosis prevented her from working full time. Tr. at 552. He also stated that Moore would not be able to work even if she did not have substance abuse problems and had a long period of sobriety. *Id.* Dr. Piepergerdes referenced listing 12.04(A) and concluded that Moore suffers from medically documented persistence of depressive syndrome, pressure of speech, flight of ideas, and inflated self-esteem, is easily distractible, and has bipolar disorder. Tr. at 554-555. He also concluded that she is extremely limited in her ability to attend work and maintain employment, interact with others, and carry out basic job functions. Tr. at 557-559.

Dr. Piepergerdes' last documented visit with Moore in the record is from 2010. Since Moore's 2010 hearing with the ALJ, parties and the ALJ have been working to flesh out the record in this case, and Moore has seen and had her file reviewed by additional doctors. Notably, Moore changed treating psychiatrists in October 2010 and now sees David Vlach, M.D. Since 2010, Moore has struggled to remain sober and has continued receiving treatment for substance abuse and bipolar disorder. Moore states that

she has now been sober from methamphetamine since December 2011. Tr. at 87. Moore claims to have stopped smoking marijuana in May 2012. Tr. at 86.

## B. ALJ Decision

On October 12, 2012, the ALJ denied Moore's request for benefits. The ALJ first noted that Moore suffered from a number of impairments, including polysubstance dependence disorder, bipolar affective disorder, degenerative disc disease of the lumbosacral spine, and a degenerative joint disease of the left hip. Tr. at 17. The ALJ then found that Moore's condition was medically equal to Section 12.04 of 20 CFR Part 404, Subpart P, Appendix 1 of the Listings. However, the ALJ concluded that Moore's substance abuse was a factor material to the severity of her impairments, and that absent ongoing drug abuse Moore's condition would not be medically equal to the Listing. The ALJ then reviewed Moore's drug abuse and treatment history, which contained evidence that Moore improved when she did not use drugs. The ALJ also noted that Moore admitted to working part-time in August 2011.

The ALJ next evaluated Moore's RFC, finding that "absent limitations and restrictions imposed by polysubstance dependence,"

> Claimant retains the residual functional capacity to lift, carry, push or pull up to 10 pounds occasionally and lesser weight frequently. She can sit 6 hours total, but can stand or walk no more than 2 hours total, each throughout the course of a normal 8-hour workday with normal breaks. She is precluded from any job requiring kneeling, crouching, crawling, or climbing ladders, ropes, or scaffolds, and she is otherwise restricted to jobs requiring no more than occasional stooping or climbing ramps or stairs. She retains the capacity to perform basic manipulative work-related activities including reaching, handling, fingering, and feeling, within the above-cited limitations. She retains no significant communicative or sensory

> work-related limitation regarding her ability to see, hear, speak, taste, or smell. Environmentally, claimant is precluded from jobs requiring exposure to hazards such as dangerous machinery and unprotected heights. Mentally, claimant should never be expected to understand, remember, or carry out detailed instructions. She is restricted to simple, repetitive, and routine job duties, and she should never be expected to exercise independent judgment regarding the nature of job duties. She is precluded from any job requiring interaction with the public and is otherwise restricted to jobs requiring no more than occasional contact with co-workers and supervisors.

Tr. at 29-30. The ALJ then reviewed the opinions of Moore's doctors that led him to his conclusions regarding her RFC. He also noted that Moore's activities of daily living did not support her statements regarding the extent of her impairments. Based on these findings, the ALJ concluded that absent her substance abuse, Moore would be able to perform such jobs as those of an addressing clerk or a document preparer.

## II.    Standard

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision 'simply because some evidence may support the opposite conclusion.'" *Mitchell v. Shalala*, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Substantial evidence is "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Gragg v. Astrue*, 615 F.3d 932, 938 (8th Cir. 2010).

**III. Discussion**

Moore contends that the ALJ's decision to deny Moore disability benefits is flawed because (1) the ALJ failed to give proper weight to the opinion of Dr. Piepergerdes, Moore's treating physician, in determining whether Moore meets Listings 12.04(A) and (B); and (2) the ALJ's evaluation of Moore's RFC is not based substantial evidence.

### A. Moore's Qualifications Under Listings 12.04(A) and (B)

Moore contends that the ALJ disregarded most of the medical evidence on the record in determining that Moore's disabilities would not fall within the scope of the Listings absent drug use. She argues that the ALJ should have relied on the treating physician opinion of Dr. Piepergerdes in evaluating the scope of Moore's disabilities, rather than relying on Dr. Frisch's opinion.

Moore's argument that she qualifies for benefits based on the Listings is premised on a single report from Dr. Piepergerdes in 2010, in which the doctor remarked that he did not believe Moore could work full time even during prolonged sobriety. Tr. at 552-559. But as the ALJ noted, the doctor's opinion regarding Moore's qualification under the Listings constitutes a legal conclusion. While treating physicians' medical opinions of a plaintiff's condition are generally accorded substantial weight, the ALJ is not to defer to a physician's opinion regarding the plaintiff's qualification for benefits. The ALJ is "responsible for making the determination or decision about whether [Moore] meet[s] the statutory definition of disability . . . A statement by a medical source that [Moore is] 'disabled' or 'unable to work' does not mean that [the ALJ] will determine

7

that [Moore is] disabled." 20 CFR §§ 404.1527(d)(1) and 416.927(d)(1); SSR 96-5p ("treating source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance"). As Dr. Piepergerdes' opinion constitutes a legal conclusion that Moore is entitled to benefits, the ALJ was not obligated to afford the opinion deference. The record contains substantial evidence outside of Dr. Piepergerdes' opinion sufficient for the ALJ to conclude that Moore's impairments did not qualify her for benefits under the Listings.[2]

Further, Moore's work history suggests that Dr. Piepergerdes' opinion of Moore's disability was incorrect. A treating source's opinion must only be given controlling weight if it is well-supported by medically acceptable diagnostic techniques and not inconsistent with the other substantial evidence in the record. SSR 96-2p, 1996 WL 374188 (July 2, 1996); *see also Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005). Because the record must be evaluated as a whole, however, "[a]n ALJ may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." *Medhaug v. Astrue*, 578 F.3d 805, 815 (8th Cir. 2009) (quoting *Goff*, 421 F.3d at 790).

Dr. Piepergerdes concluded that Moore has been disabled since 2006. From 2006-2008, however, Moore worked full-time in a skilled occupation. Given Dr. Piepergerdes'

---

[2] Moore raises questions in her brief about the utility of the psychiatrists' assessed GAF scores in evaluating Moore's capabilities. Doc. 6, p. 25-26. Given the substantial amount of substantive evidence cited in the ALJ's opinion, however, reference to the GAF scores, even if unreliable, does not constitute harmful error.

8

belief that Moore was disabled even while she maintained full-time employment, substantial evidence supports the ALJ's decision to disregard his opinion regarding the extent of Moore's disability. The doctor's opinion was also rendered before Moore began applying for jobs and working part-time in 2011. Moore's work history suggests that her impairments do not rise to the level suggested by Dr. Piepergerdes and supports the ALJ's conclusion that Moore would not qualify for benefits under the Listings in the absence of drug abuse.

The ALJ's conclusion is also supported by doctors' opinions outside of that of Dr. Piepergerdes. Moore began to receive primary care from Dr. Vlach in 2011 and his notes suggested that Moore was improving. The ALJ also relied on the opinion of Glen Frisch, M.D., in making her decision. Dr. Frisch concluded that Moore's substance abuse materially affected the extent of Moore's impairment, and that if Moore were to get sober, she would be capable of simple work. Tr. at 460. As Moore notes, Dr. Frisch never evaluated Moore in person and reached his conclusions based solely on his review of Moore's medical records. While non-examining physician opinions are generally accorded less weight than treating physician opinions, "the more consistent an opinion is with the record as a whole, the more weight [the ALJ] will give to that opinion." 20 CFR §§ 404.1527(c)(4) and 416.927(c)(4). While inconsistent with Dr. Piepergerdes' ultimate conclusion, Dr. Frisch's opinion is consistent with the substance of both Dr. Vlach and Dr. Piepergerdes' treatment notes regarding the effect of Moore's drug abuse on her functional abilities.

The difficulty of assessing the merits of Moore's request for disability benefits in this case, as noted by both Moore and the ALJ, is that Moore's longest period of self-reported sobriety on the record is three months, and "it is questionable if Moore was even sober for those three months straight." Doc. 6, p. 26. Moore argues that "[i]t is hard to believe the ALJ can conclude, with certainty, that Moore would be significantly improved, without disabling limitations, when she is clean and sober, as she has never really been clean and sober her entire life." Doc. 6, p. 26. Whether the ALJ can be "certain," however, is not the question before this Court. Regardless of the existence of some evidence that raises questions about Moore's mental capabilities absent drug use, the record contains evidence adequate to support the ALJ's conclusion that Moore would not meet the requirements of Listings 12.04(A) or (B) if she were sober. *See Mitchell*, 25 F.3d at 714; *Gragg*, 615 F.3d at 938.

### B. ALJ Conclusions Regarding Moore's RFC

Moore contends that the ALJ failed to base her RFC assessment on the entirety of the evidence in the record and failed to build a bridge between the medical evidence and the RFC. Upon review, however, the record contains substantial evidence to support the ALJ's conclusions regarding Moore's RFC.

The ALJ was obligated to determine Moore's RFC "based on all relevant evidence including the medical records, observations of treating physicians and others, and an individual's own description of his limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (quotation and citation omitted). In reviewing the totality of the evidence, the ALJ was obligated to consider Moore's own complaints about her condition, but was not

obligated to adopt Moore's conclusions regarding her abilities in determining her RFC. *Eichelberger v. Barnhart*, 390 F.3d 584, 590 (8th Cir. 2004) (citing *Polaski*, 739 F.2d at 1322) ("The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the claimant's complaints."). The ALJ reviewed Moore's testimony as required. The ALJ noted that the record reflected Moore taking a camping trip, moving residences, going shopping, and doing housework. Tr. at 29. Further, Moore spent a significant amount of time applying for jobs in 2011. *Id.; see Mitchell v. Sullivan*, 907 F.2d 843 (8th Cir. 1990). Moore also admitted being able to lift and carry a case of water and perform activities of daily living with no problem. Tr. at 62. This evidence supports the ALJ's conclusions regarding Moore's RFC.

In her opinion, the ALJ walks through Moore's medical history, the doctors' opinions regarding her abilities, her physical impairments, and her daily activities to justify the RFC evaluation. *Id.* This discussion "build[s] an accurate and logical bridge between the evidence and the result" in this case. *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996). Moore cites a multitude of facts in her brief that she contends the ALJ overlooked in determining her RFC. These facts are all either supported by the terms of the RFC or addressed in the ALJ's discussion of the limitations included in the RFC. For example, Moore emphasizes multiple times that she is "limited in the ability to understand and remember detailed instructions"; the RFC specifically states that Moore "should never be expected to understand, remember, or carry out detailed instructions." Doc. 6, 33-34; Tr. at 30. The ALJ also included limitations on Moore's ability to stoop,

kneel, and crouch in accordance with her back and hip problems. The ALJ addressed other of Moore's criticisms in her reasoning. For example, Moore notes the ALJ's failure to include limitations on Moore's driving in her RFC; however, the ALJ noted that Moore "was repeatedly driving a car without any report of difficulty therein aside from getting tickets from police." Doc. 6, p. 32; Tr. at 33.

**IV.    Conclusion**

The Commissioner's final decision is affirmed.

s/ Nanette K. Laughrey<br>
NANETTE K. LAUGHREY<br>
United States District Judge

Dated:  October 24, 2014
Jefferson City, Missouri